J-S55020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICKEY MCGINNIS | : | |
| | : | |
| Appellant | : | No. 16 WDA 2020 |

Appeal from the Judgment of Sentence Entered December 4, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0011014-2018

BEFORE:   BOWES, J., McCAFFERY, J., and COLINS, J.[*]

DISSENTING MEMORANDUM BY COLINS, J.:           **FILED: JUNE 28, 2021**

I respectfully dissent from the majority's affirmance of the trial court's determination that Section 5920 of the Judicial Code barred the testimony of Appellant's expert, Dr. Bruce Chambers, because Dr. Chambers would have improperly offered an "opinion regarding the credibility of any [] witness, including the victim."  42 Pa.C.S. § 5920(b)(3).  In **Commonwealth v. Jones**, 240 A.3d 881 (Pa. 2020), our Supreme Court held that a police officer could testify as an expert under Section 5920 on the issue of "whether or not it was common for child victims of sexual assault to have trouble remembering dates and details of ongoing sexual assaults."  **Id.** at 891; **see also Commonwealth v. Smith**, 206 A.3d 551, 562 (Pa. Super. 2019) (holding as permissible under Section 5920 expert testimony that child victims of sexual

_____

[*] Retired Senior Judge assigned to the Superior Court.

abuse share the details of the abuse in piecemeal fashion and that child victims relate details differently in separate accounts of the abuse). Moreover, in this case, Jamie Mesar, the Commonwealth's expert on child sexual abuse, offered broad-ranging testimony upon such topics as children who initially disclose sexual abuse but then "recant[]" or "change" their accounts of abuse and "child[ren who] might not have disclosed enough" in an initial forensic interview but are able to relate more details of the abuse in later interviews after further therapy.[1] N.T., 9/9/19, at 62-63, 68-70.

In light of the expansive understanding of the bounds of expert testimony in sexual abuse cases under Section 5920, including the testimony of the Commonwealth's expert sanctioned by the trial court in this very case, I fail to discern any principled rationale to justify the trial court's exclusion of Dr. Chambers' proposed **generic** expert testimony that, as a result of repeated forensic interviews and psychotherapy sessions, some children

_____

[1] Notably, Ms. Mesar is the director of the Child Advocacy Center at UPMC Children's Hospital where the victim's forensic interviews took place, and she was permitted, over defense objection, to describe aspects of the forensic interview process. N.T., 9/9/19, at 49-50, 68-70, 76-80. Later at trial, police officers who witnessed the three interviews at the Child Advocacy Center discussed the evolving nature of the victim's disclosures of sexual abuse over the course of the interviews. N.T., 9/9/19, at 177-82, 188-92. While not directly at issue in this appeal, I believe that, due to the nature of her organization's role in this case, Ms. Mesar's testimony strayed beyond "the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted," the topics for which her testimony was approved by the trial court, and instead served to bolster the "credibility of [] the victim['s]" reports of sexual abuse during his forensic interviews. 42 Pa.C.S. § 5920(b)(1), (3).

mistakenly come to believe that they are victims of sexual abuse. *See Commonwealth v. Walker*, 92 A.3d 766, 784 (Pa. 2014) ("Expert testimony on relevant psychological factors . . . does not directly speak to whether a particular witness was untrustworthy, or even unreliable, as the expert is not rendering an opinion on whether a specific witness [testified accurately]. Rather, such testimony teaches—it provides jurors with education by which they assess for themselves the witness's credibility."); *Smith*, 206 A.3d at 561 (stating that while *Walker* related to the admissibility of expert testimony concerning witness identification, the principle enunciated in that case "is applicable to expert testimony on the dynamics of sexual violence and victim responses to sexual violence"). As I would find that the trial court abused its discretion in excluding Dr. Chambers from testifying, I would vacate Appellant's conviction and remand for a new trial at which Appellant's counsel shall be permitted to introduce the testimony of his expert.